# EXHIBIT 2

```
                                                                       1

 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   MISH INTERNATIONAL MONETARY, INC., )
     on behalf of itself and all others )
 4   similarly situated,                )
                                        )
 5                    Plaintiff,        )
                                        )
 6        vs.                           )  No. 20 C 4577
                                        )
 7   VEGA CAPITAL LONDON, LTD., et al., )  Chicago, Illinois
                                        )  May 30, 2024
 8                    Defendants.       )  9:30 o'clock a.m.

 9
                       TRANSCRIPT OF PROCEEDINGS -
10                  Telephone Motion Hearing and Ruling
                   BEFORE THE HONORABLE MANISH S. SHAH
11

12   APPEARANCES (Telephonically):

13   For the Plaintiff:         LOVELL STEWART HALEBIAN JACOBSON, LLP
                                BY:  MR. CHRISTOPHER M. McGRATH
14                                   MR. CHRISTOPHER LOVELL
                                500 Fifth Avenue, Suite 2440
15                              New York, New York  10110
                                (212) 608-1900
16

17   For Defendants Vega        AKERMAN, L.L.P.
     Capital London and         BY:  MR. MICHAEL P. KELLY
18   Adrian Spires:             750 Ninth Street, Suite 750
                                Washington, D.C.  20001
19                              (202) 824-1716

20                              AKERMAN, L.L.P.
                                BY:  MS. AMY GRAHAM DOEHRING
21                                   MR. SHAWN M. TAYLOR
                                71 South Wacker Drive, 47th Floor
22                              Chicago, Illinois  60606
                                (312) 634-5700

23

24

25


                 Colleen M. Conway, Official Court Reporter
```

```
 1   APPEARANCES (Continued - Telephonically):

 2

 3   For Defendants Vega       AKERMAN, L.L.P.
     Capital London and        BY:  MR. JOEL S. FORMAN
 4   Adrian Spires (Cont'd):   520 Madison Avenue, 20th Floor
                               New York, New York  10022
 5                             (212) 259-8760

 6                             DOWD BENNETT, L.L.P.
                               BY:  MS. MICHELLE NASSER
 7                             7676 Forsyth Boulevard, Suite 1900
                               St. Louis, Missouri  63105
 8                             (314) 889-7300

 9
     For the Trader            DECHERT, L.L.P.
10   Defendants:               BY:  MR. MATTHEW MAZUR
                               1095 Avenue Of The Americas
11                             Three Bryant Park
                               New York, New York  10036
12                             (212) 698-3500

13
     For Subpoena Respondent/  LOCKE LORD, L.L.P.
14   Nonparty Vitol, Inc.:     BY:  MR. P. RUSSELL PERDEW
                                    MS. BELLA SEEBERG
15                             111 South Wacker Drive
                               Chicago, Illinois  60606
16                             (312) 443-1712

17
     For Subpoena Respondent/  HERBERT SMITH FREEHILLS NEW YORK, LLP
18   Nonparty Glencoe, Ltd.:   BY:  MR. PETER BEHMKE
                               200 Park Avenue, 16th Floor
19                             New York, New York  10166
                               (917) 542-7611
20

21

22
                   COLLEEN M. CONWAY, CSR, RMR, CRR
23                      Official Court Reporter
                219 South Dearborn Street, Room 1918
24                     Chicago, Illinois  60604
                            (312) 435-5594
25                 colleen_conway@ilnd.uscourts.gov
```

1       (Proceedings heard telephonically:)
2            THE COURT:  Good morning.  This is Judge Shah.
3  The clerk will call the case.
4            THE CLERK:  20 CV 4577, Mish International Monetary
5  versus Vega Capital.
6            THE COURT:  Good morning, everyone.  I understand
7  that counsel of record have their appearances noted with our
8  court reporter, so I am not going to run through the roll call
9  this morning.
10           I want to start with the motion to lift the
11 confidentiality designations on Dr. Pirrong's deposition.
12           I saw plaintiff's response.  Plaintiff takes no
13 position on the motion.  No one thinks that these pages, pages
14 534, 548, 549, 550, and 551, contain secrets that must be kept
15 from the public in this litigation.  So the motion is granted.
16           Let me ask counsel for Vega and Spires what you think
17 about lifting the confidentiality designations on paragraphs
18 334 to 337 of Dr. Pirrong's report, putting aside the question
19 of whether you need to attach those paragraphs to any kind of
20 filing in any other motion practice.  But does Vega and
21 Defendant Spires have any objection to lifting the
22 confidentiality designations of those paragraphs?
23           MR. KELLY:  Good morning, Your Honor.  This is
24 Michael Kelly for Vega.
25           And we don't have an objection to lifting the

1 confidentiality restrictions on those four paragraphs.
2  THE COURT: And on behalf of Plaintiff Mish, confirm
3 for me that you, too, are comfortable lifting those
4 confidentiality designations of those paragraphs.
5  I think that was the import of your response, but
6 just making sure I am on the same page.
7  MR. McGRATH: Yes, Your Honor. This is Chris
8 McGrath.
9  That's correct. We don't think that there's anything
10 in those paragraphs that reflects any confidential information
11 from any party or nonparty.
12  THE COURT: So then I will lift the confidentiality
13 designations on paragraphs 334 to 337 of Dr. Pirrong's report.
14  On behalf of Mish, is there any reason to keep your
15 current pending motion to seal your response, is there any
16 reason to keep that under seal anymore? Can I deny that motion
17 and unseal it as well?
18  MR. McGRATH: Well, yes, Your Honor, is the short
19 answer. However, I think there are -- we submitted those
20 paragraphs, but there's also some additional paragraphs that
21 come before 334 and some that come after 337 that I think do
22 need to be redacted.
23  Those aren't the paragraphs we're requesting to
24 unseal, but they just happen to be on the pages, so to --
25  THE COURT: I did see that, I did see that, and I was

1  wondering if those other paragraphs mattered or not for sealing
2  purposes.  If that's your position, that's fine.
3          What I am going to do is, I'll grant the motion to
4  file your response under seal and just leave it at that.
5          The motion, Vega's motion, as I just said, is
6  granted.  Those paragraphs -- in addition, those paragraphs are
7  also lifted from the confidentiality designation, and the
8  parties can just proceed accordingly.
9          I won't worry about sealing other redactions on
10 plaintiff's response.  We'll just keep it sealed for now, and
11 we'll sort it out eventually.
12         Let me give you a ruling on the motions, the pending
13 motions to quash and compel.  And this relates to Vitol and
14 Glencore.
15         Although there are other subpoena respondents who
16 have worked out compliance with subpoenas, I am persuaded that
17 Vitol's and Glencore's roles in the market make them different
18 and increases the potential relevance of their participation
19 and their insight into the events surrounding the May 2020 WTI
20 futures contract.  Vitol's and Glencore's evidence may have
21 value that isn't already covered by other subpoena respondents.
22         I also agree with Vega that the protective order can
23 mitigate the competitive risk.  Ultimately, the information
24 will likely be mediated through expert testimony, which can
25 also separate the most sensitive information from falling into

1  the hands of the defendants themselves.  That the experts are
2  also consultants in the industry doesn't persuade me that they
3  can't comply with the terms of a protective order.  So
4  relevance and confidentiality don't suffice to forgive Glencore
5  and Vitol from complying with the subpoenas entirely.
6          I am not persuaded that the requested evidence will
7  move the needle much on the typicality question.  Looking at
8  plaintiff's proposed class definition, it seems unlikely to me
9  that the vagaries of a putative class member's trading
10 strategies or patterns will affect the decision on whether
11 plaintiff has a typical claim about defendants' conduct as
12 compared to anyone else who sold a May 2020 contract between
13 9:00 a.m. and 1:30 p.m. to liquidate a long position.
14         But Vitol and Glencore are nonparties, and burdening
15 them with discovery should come with some extra caution.  The
16 way to account for their burden, relevance, and confidentiality
17 concerns is to sharply curtail and limit the scope of
18 information to be provided in response to the subpoenas.
19         Vega doesn't need the trades.  Vega has plenty of
20 trading data.  And I am persuaded that it doesn't make sense to
21 group Vitol's trades, for example, under one umbrella, given
22 that individual traders are doing their own thing.  What is
23 most relevant to Vega is why the price went negative and why
24 these oil traders didn't seize on the negative price to make
25 profitable trades.  Internal documents or communications about

1  that also happen to be the most proprietary or competitively
2  sensitive from Vitol's or Glencore's perspective.  Vega already
3  has access to information to explain why the May contract was
4  undesirable.  But corroboration is relevant.  The stakes are
5  high in this case, and all parties and respondents can bear the
6  expense of some discovery without disruption.  Vitol's and
7  Glencore's perception of the market and their understanding of
8  storage capacity at Cushing are relevant to Vega's theories,
9  and that's different than evidence of actual capacity.
10           Vega's request for information "sufficient to show"
11  is an effort to limit burden on the subpoena respondents, and
12  subpoena respondents can make a sufficient showing with, I
13  conclude, minimal burden and minimal revelation of
14  competitively sensitive information, as I'll describe.
15           So after balancing all of the requisite interests
16  here, I am ordering the subpoena respondents, Vitol and
17  Glencore, to respond on three topics and produce documents on
18  three topics:
19           No. 1, documents sufficient to show your
20  understanding of storage at Cushing for the May WTI contract as
21  of April 20, 2020;
22           2.  Documents sufficient to show whether and when you
23  thought the price for the May WTI contract would go negative.
24  You don't need to produce documents explaining in depth how or
25  why you knew that, but some indicia of the basis for that

belief; if it existed, that belief;

Finally, No. 3, documents sufficient to show your communications with CME, the New York Mercantile Exchange, or the Intercontinental Exchange about the May 2020 WTI contract, limited to notices received from those entities, your responses to those entities, and correspondence with those entities about the April 20, 2020 and April 21, 2020 trading in the May 2020 WTI contract.

Stepping back a bit. I suspect there are executive summaries of Glencore's and Vitol's understanding and reaction to the May 2020 WTI futures contract, and that's what should be produced.

Again, to give you a sense of where I am coming from, I agree with Vega that it's reasonable to expect that, for example, Vitol's CEO received some sort of briefing, and that kind of document would be sufficient to comply with my order.

Notwithstanding the protection of the protective order, subpoena respondents can redact analysis. I am not turning third parties into unretained experts here.

I am inclined to give the subpoena respondents about five weeks to comply. Hopefully, you can comply sooner than that.

And I also would expect that you may need to meet and confer and discuss a little bit. And, hopefully, you don't need more direction from me in light of this ruling, but you

1  may.
2        I am not awarding any fees or costs in connection
3  with any of these motions because both sides were substantially
4  justified in their positions.
5        Let me pause here and ask counsel for Vitol if five
6  weeks is a reasonable deadline for you to synthesize what I
7  have just said and comply with it.
8        MR. PERDEW:  Good morning, Your Honor.  Russell
9  Perdew on behalf of Vitol.  Thank you for the chance to be
10 here.
11       I believe it is.  I would like to just touch base
12 with my client, and I guess I don't want to rule out the
13 possibility that some issue might come up, but five weeks seems
14 appropriate, and so I am going to do everything I can to make
15 sure that we can comply in that time.
16       THE COURT:  Given the Fourth of July holiday here, I
17 will bump that out to Tuesday, July 9th for compliance.
18       Let me ask counsel for Glencore whether you have any
19 issues with that timetable?
20       MR. BEHMKE:  Thank you, Your Honor.  Peter Behmke on
21 behalf of Glencore.
22       I don't believe we'll have any issues with that
23 timetable.  I do think it's appropriate.  Although, I'll need
24 to consult with my client on the specifics.
25       Your Honor, I do have a question about the protective

1  order, if it's appropriate to raise that now.

2  THE COURT: Sure. Go ahead.

3  MR. BEHMKE: Okay. So under the protective order, as
4  I understand it, there's no limitation on the ability of, say,
5  the defendants or the plaintiffs to take the Glencore-produced
6  information and put it in front of a witness, including a
7  third-party witness, at a deposition. So, for example, they
8  could take the Glencore documents and put it in front of the
9  head trader for Exxon and ask them whether, you know, they had
10 a similar view or, you know, et cetera.

11 Would it be possible -- perhaps we can do this
12 offline. But I'd like the opportunity to meet and confer with
13 the parties to negotiate some -- you know, some additional
14 restrictions and limitations to the protective order, just to
15 make sure that -- you know, that that sort of information is
16 not going to, you know, its competitors.

17 I understand that, of course, the witness is not
18 allowed to, quote-unquote, use that information for any
19 business purpose, but, you know, of course, once, you know, a
20 trader sees it, it's hard to forget it in the course of -- you
21 know, when they go back to work the next day.

22 So that's one example. I think --

23 THE COURT: Understood.

24 MR. BEHMKE: -- there are a couple other issues --

25 THE COURT: Let me --

1    MR. BEHMKE: -- (inaudible) we need to produce.
2    THE COURT: Understood. Let me interrupt just to
3 say, I will -- part of why I thought five weeks is an
4 appropriate timetable here is I anticipate some meeting and
5 conferring and seeing if you can't work something out,
6 including on whether any additional provisions of the
7 protective order ought to be in place.
8    For your purposes moving forward, I will say that I
9 understand those concerns. Likely, there are ways to limit
10 exposure or examination of the information. The terms of the
11 protective order are likely good enough in most instances, but
12 if there are particular concerns, first, try to work it out
13 with the parties; and if you can't, let me know, and I'll see
14 if I can help with a concrete -- if there is a concrete issue
15 or an example.
16    A lot of this is going to depend on what the
17 information ultimately is that is produced. I have tried to
18 keep it fairly narrow and what I expect to be ultimately not
19 particularly controversial, especially with the passage of
20 time.
21    So you'll have to think through all of those issues.
22 But yes, you have time to meet and confer and think about
23 whether the protective order needs any adjustments.
24    Let me ask --
25    MR. BEHMKE: Thank you.

1 THE COURT: -- Vega, counsel for Vega if there are
2 any issues you have with that timetable that I just gave the
3 subpoena respondents?
4 MR. KELLY: We do not. Thank you, Your Honor.
5 THE COURT: For the -- well, let me just provide the
6 conclusion. For the reasons stated, Vitol's motion to quash in
7 case No. 24-1492 is granted in part; and Vega's motion to
8 compel in case No. 24-2628 is granted in part.
9 For the -- what I gather to be a looming fight over
10 some depositions, I'll just let people know that I'd be
11 interested in knowing whether a deposition is more burdensome
12 than producing documents or whether there is some way for a
13 deposition without documents, of some kind of sophisticated
14 market participant who can explain what they thought was going
15 on with this contract, might be simpler than digging through
16 documents.
17 That's just a thought that crossed my mind. And I
18 think it's probably easy for me to say because I don't have to
19 prep a witness for a deposition, and I don't have to prepare to
20 take or defend a deposition, but I thought I would throw that
21 out there while I had everybody on the phone this morning.
22 I think -- let me ask Vega, are there looming
23 discovery motions coming my way?
24 MR. KELLY: Your Honor, yes, there are.
25 BP Products North America, Inc. has filed a motion to

1  quash a deposition subpoena in the Northern District of
2  Illinois.
3          The motion was assigned to Judge Pacold, and we have
4  reached an agreement with BP Products that we would move to
5  reassign the case to Your Honor, with a proposed briefing
6  schedule for that case.
7          And then the second motion to quash has been filed in
8  the Southern District of Texas. It was filed on Friday. And
9  we've reached an agreement with Shell Trading (U.S.) Company
10 that that motion will be transferred to the Northern District
11 of Illinois. And we hope to file the unopposed motion to
12 transfer this week, so it will probably show up in court, I
13 assume, sometime next week. And we can go through the same
14 process with moving to reassign it to the Court if it's
15 assigned to another judge in the district.
16         THE COURT: That's all fine. I will keep my eye out
17 for that motion practice.
18         And you can anticipate that the motions to reassign
19 will be granted and I'll take those motions.
20         And you can also anticipate that I'll agree to
21 whatever agreed briefing schedule the parties have worked out.
22         Let me ask plaintiff's counsel if there's anything --
23 since we're all together this morning, if there's anything I
24 can help you with this morning?
25         MR. McGRATH: Not from the plaintiffs, Your Honor.

14

1 Thank you.
2         THE COURT:  From Vega and Defendant Spires'
3 perspective, anything else you'd like to raise with me?
4         MR. KELLY:  Nothing further.  Thank you, Your Honor.
5         THE COURT:  On behalf of the Trader defendants, is
6 there anything you'd like to raise?
7         MR. MAZUR:  No.  Thank you, Your Honor.
8         THE COURT:  Thank you, everyone, for calling in.
9         We are in recess.
10      (Proceedings concluded.)

**Colleen M. Conway, Official Court Reporter**

C E R T I F I C A T E

1
2
3
4
5      I, Colleen M. Conway, do hereby certify that the
6  foregoing is a complete, true, and accurate transcript of the
7  Motion Hearing and Ruling proceedings had in the above-entitled
8  case before the HONORABLE MANISH S. SHAH, one of the Judges of
9  said Court, at Chicago, Illinois, on May 30, 2024.
10
11
12      _/s/ Colleen M. Conway, CSR, RMR, CRR_         _05/30/2024_
13              Official Court Reporter                  Date
               United States District Court
14             Northern District of Illinois
                    Eastern Division
15
16
17
18
19
20
21
22
23
24
25