# EXHIBIT 11

| | |
|---|---|
| **Mish International Monetary, Inc.** § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **Vega Capital London Limited, et al.** § <br> § <br> **Defendant.** § | In Re: Civil Action No. 1:20-cv-4577 <br> Pending in the N.D.Ill. |

**NON-PARTY EXXONMOBIL OIL CORPORATION'S RESPONSES
AND OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS**

To:   Lauren Goddard, Akerman LLP, Lauren.Goddard@akerman.com

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Non-Party ExxonMobil Oil Corporation ("ExxonMobil") serves these Objections and Responses to the Subpoena ("Subpoena") served by Defendants Vega Capital London Limited and Adrian Spires (collectively, the "Defendants") in connection with the above-captioned lawsuit (the "Lawsuit").

Respectfully submitted,

**MCGINNIS LOCHRIDGE LLP**

*/s/ Seth Isgur*
Seth Isgur
State Bar No. 24054498
sisgur@mcginnislaw.com
William K. Grubb
State Bar No. 24107793
wgrubb@mcginnislaw.com
609 Main Street, Suite 2800
Houston, Texas 77002
(713) 615-8500
(713) 615-8585 (fax)

***Attorneys for ExxonMobil Oil Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served on counsel for the Defendants by email on December 8, 2023.

　　　/s/   Seth Isgur
　　　　　Seth Isgur

## **PRELIMINARY STATEMENT & OBJECTIONS**

ExxonMobil offers the following preliminary statement and objections regarding the Instructions and Definitions in the Subpoena served by the Defendants:

ExxonMobil is not a party to the lawsuit, and its understanding of the facts and issues associated therewith is still developing. ExxonMobil's responses and objections to the Subpoena are based on ExxonMobil's present understanding, and ExxonMobil reserves the right to modify, supplement, and/or amend its responses and objections based on future developments.

ExxonMobil objects to the Instructions and Definitions in the Subpoena as follows:

1. ExxonMobil objects to the definition of "Agent" as overbroad and failing to describe with reasonable particularity the persons included within said definition. Specifically, by including "past and present employees, directors, trustees, officers, commissioners, supervisors, consultants, attorneys, independent contractors, paralegals, secretaries, accountants, representatives, and any other person acting on behalf of the applicable entity," the definition implicates an incalculable number of persons who cannot be readily identified. Requiring ExxonMobil—a non-party—to attempt to identify this incalculable number of persons and then gather, review, and produce whatever responsive documents (if any) they may have is unduly burdensome and renders the Subpoena overbroad given the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, No. 3:18-cv-171-CWR-FKB, 2022 U.S. Dist. LEXIS 29447, at *6-7 (S.D. Miss. 2022) (finding document requests relying on definitions including "officers, directors, employees, partners, agents, representatives, corporate parents, predecessors, successors, subsidiaries, and affiliates" to be facially overbroad).

2. ExxonMobil objects to the definition of "CME" as overbroad and failing to describe with reasonable particularity the persons or entities included within said definition. Specifically, by including "any and all affiliates[,] subsidiaries, directors, divisions, exchanges, subdivisions (including, but not limited to, the NYMEX), groups, offices, branches, departments, employees, consultants, agents, representatives, accountants, predecessors or successors, and assigns, wherever they may be situated, and any other person or entity acting on its behalf," the definition implicates an incalculable number of persons and entities that cannot be readily identified. Requiring ExxonMobil—a non-party—to attempt to identify this incalculable number of persons and entities and then gather, review, and produce whatever responsive documents (if any) they may have is unduly burdensome and renders the Subpoena overbroad considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, No. 3:18-cv-171-CWR-FKB, 2022 U.S. Dist.

LEXIS 29447, at *6-7 (S.D. Miss. 2022) (finding document requests relying on definitions including "officers, directors, employees, partners, agents, representatives, corporate parents, predecessors, successors, subsidiaries, and affiliates" to be facially overbroad).

3. ExxonMobil objects to the definition of "ICE" as overbroad and failing to describe with reasonable particularity the persons or entities included within said definition. Specifically, by including ICE's "parents, subsidiaries, affiliates, employees, agents, and any other person or entity acting on its behalf, wherever they may be situated" the definition implicates an incalculable number of persons and entities that cannot be readily identified. Requiring ExxonMobil—a non-party—to attempt to identify this incalculable number of persons and entities and then gather, review, and produce whatever responsive documents (if any) they may have is unduly burdensome and renders the Subpoena overbroad considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, No. 3:18-cv-171-CWR-FKB, 2022 U.S. Dist. LEXIS 29447, at *6-7 (S.D. Miss. 2022) (finding document requests relying on definitions including "officers, directors, employees, partners, agents, representatives, corporate parents, predecessors, successors, subsidiaries, and affiliates" to be facially overbroad).

4. ExxonMobil objects to the definition of "NYMEX" as overbroad and failing to describe with reasonable particularity the persons or entities included within said definition. Specifically, by including NYMEX's "parents (including, but not limited to, CME Group), subsidiaries, affiliates, employees, Agents, or persons or entities acting on its behalf or under its control," the definition implicates an incalculable number of persons and entities that cannot be readily identified. Requiring ExxonMobil—a non-party—to attempt to identify this incalculable number of persons and entities and then gather, review, and produce whatever responsive documents (if any) they may have is unduly burdensome and renders the Subpoena overbroad considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, No. 3:18-cv-171-CWR-FKB, 2022 U.S. Dist. LEXIS 29447, at *6-7 (S.D. Miss. 2022) (finding document requests relying on definitions including "officers, directors, employees, partners, agents, representatives, corporate parents, predecessors, successors, subsidiaries, and affiliates" to be facially overbroad).

5. ExxonMobil objects to the definition of "You," "Your," "ExxonMobil," and "Exxon Mobil" as overbroad and failing to describe with reasonable particularity the persons or entities included within said definition. Specifically, by including all of ExxonMobil Oil Corporation's "affiliates, subsidiaries, parents, directors, divisions, subdivisions, groups, offices, branch offices, departments, employees, brokers, traders, consultants, Agents, representatives, accountants, predecessors or successors, and assigns wherever

they may be situated," the definition implicates an incalculable number of persons and entities that cannot be readily identified. Requiring ExxonMobil—a non-party—to attempt to identify this incalculable number of persons and entities and then gather, review, and produce whatever responsive documents (if any) they may have is unduly burdensome and renders the Subpoena overbroad considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, No. 3:18-cv-171-CWR-FKB, 2022 U.S. Dist. LEXIS 29447, at *6-7 (S.D. Miss. 2022) (finding document requests relying on definitions including "officers, directors, employees, partners, agents, representatives, corporate parents, predecessors, successors, subsidiaries, and affiliates" to be facially overbroad).

6. ExxonMobil objects to the definitions of "Communication", "Document," "Include" (and iterations thereof), and "Relate" (and iterations thereof) to the extent they exceed the scope of the Federal Rules of Civil Procedure.

Moreover, ExxonMobil objects to the Subpoena in its entirety for the following reasons:

1. ExxonMobil objects to the Subpoena as failing to provide a reasonable time period for compliance. In particular, the Subpoena was served on ExxonMobil on November 16, 2023 and requires compliance on December 18, 2023. Given the number and scope of document requests contained in the Subpoena, 32 days (which days include the week of Thanksgiving) is an adequate and unreasonable compliance period.

2. ExxonMobil objects that—given the number and scope of the document requests contained in the Subpoena—the Defendants are imposing an undue burden and/or expense on ExxonMobil.

3. ExxonMobil objects to the Subpoena to the extent that it seeks the production of any documents or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable claim of privilege, law, or rule ("Privileged Information"). ExxonMobil will not produce Privileged Information, and any undertaking by ExxonMobil to produce documents should be understood to exclude Privileged Information. ExxonMobil specifically reserves the right to demand the return of any documents that inadvertently may be produced if ExxonMobil determines, in his sole discretion, that such documents may constitute or contain Privileged Information.

4. ExxonMobil objects to the Subpoena to the extent it purports to require ExxonMobil to disclose documents or information that ExxonMobil is required to maintain in confidence pursuant to an agreement or understanding with any third party ("Third Party Confidential Information"). ExxonMobil will not produce Third Party Confidential Information except pursuant to an appropriate release from any such third party or an appropriate court order.

5

5.  ExxonMobil objects to the Subpoena to the extent it purports to require the production of documents that are not within the possession, custody or control of ExxonMobil. ExxonMobil will not produce documents in the possession, custody or control of any third party.

6.  ExxonMobil objects to the Subpoena to the extent it seeks the production of multiple identical copies of the same document.

7.  ExxonMobil's failure to object on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional ground(s). In making these objections, ExxonMobil does not in any way waive or intend to waive, but rather intends to preserve and is preserving, should it become appropriate:

    a.  all objections as to competency, relevancy, materiality, and admissibility of any documents that may be produced in response to the Subpoena, or the subject matter thereof;

    b.  all rights to object on any ground to the use of any of the documents that may be produced in response to the Subpoena, or the subject matter thereof, in any subsequent proceedings, including the trial of this or any other action; and

    c.  all rights to object on any ground to any request for further responses to this or any other Subpoena.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Documents sufficient to show the following information for Your trades in the May WTI Contract during the April 20th Trading Day and/or April 21st Trading Day: (i) the type of each trade (e.g., purchase or sale); (ii) the amount of each trade, in terms of the number of lots and the price per lot; and (iii) the time each trade took place in Central Daylight Time (CDT).

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. Significant market data is publicly available and therefore obtainable from a more convenient and less burdensome source. *See, e.g.*, Commodity Futures Trading Commission, INTERIM STAFF REPORT, *Trading in NYMEX WTI Crude Oil Futures Contract Leading up to, on, and around April 20, 2020* (Nov. 23, 2020). Further, discovery of information other than aggregate trading information, which is publicly available, is unduly burdensome and the expense outweighs the likely benefits.

ExxonMobil also objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i).

ExxonMobil further objects to this request as ambiguous and overbroad because "documents sufficient to show" is inherently subjective and subject to multiple interpretations.

In addition, ExxonMobil objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil also objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 2:** Documents sufficient to show when and how each position You held in the May WTI Contract on the April 20th Trading Day and/or April 21st Trading Day was liquidated.

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. Significant market data is publicly available and therefore obtainable from a more convenient less burdensome source. *See, e.g.*, Commodity Futures Trading Commission, INTERIM STAFF REPORT, *Trading in NYMEX WTI Crude Oil Futures Contract Leading up to, on, and around April 20, 2020* (Nov. 23, 2020). Further, discovery of information other than aggregate trading information, which is publicly available, is unduly burdensome and the expense outweighs the likely benefits.

ExxonMobil also objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i).

ExxonMobil further objects to this request as ambiguous and overbroad because "documents sufficient to show" is inherently subjective and subject to multiple interpretations.

In addition, ExxonMobil objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil also objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 3: Documents sufficient to show the amount of any long or short position You held in the May WTI Contract at any time on the April 20th Trading Day).**

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. Significant market data is publicly available and therefore obtainable from a more convenient less burdensome source. *See, e.g.*, Commodity Futures Trading Commission, INTERIM STAFF REPORT, *Trading in NYMEX WTI Crude Oil Futures Contract Leading up to, on, and around April 20, 2020* (Nov. 23, 2020). Further, discovery of information other than aggregate trading information, which is publicly available, is unduly burdensome and the expense outweighs

the likely benefits.

ExxonMobil also objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i).

ExxonMobil further objects to this request as ambiguous and overbroad because "documents sufficient to show" is inherently subjective and subject to multiple interpretations.

In addition, ExxonMobil objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil also objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 4: Documents sufficient to show whether and when You knew or believed that the May WTI Contract could trade at negative prices.**

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, vague, ambiguous, and failing to specify the requested materials with reasonable particularity in seeking "documents sufficient to show whether and when You knew or believed" the referenced contract "could trade at negative prices." Whether and when ExxonMobil "knew" or "believed" that something "could" have happened is inherently vague and ambiguous (as is "documents sufficient to show"), especially considering that the objectionably overbroad definitions of "You" and "ExxonMobil" includes ExxonMobil Oil Corporation and all of its "affiliates, subsidiaries, parents, directors, divisions, subdivisions, groups, offices, branch offices, departments, employees, brokers, traders, consultants, Agents, representatives, accountants, predecessors or successors, and assigns wherever they may be situated." Thus, responding to this request would require that ExxonMobil ascertain the personal knowledge and beliefs as to whether something "could" occur from an incalculable number of unidentified persons and entities before ExxonMobil could even begin to identify and gather any potentially responsive materials.

In addition, ExxonMobil objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i). This concern is particularly stark given that the parties to this lawsuit compete in the same trading markets as ExxonMobil and are seeking documents speaking to ExxonMobil's confidential and internal views and strategies when trading in those markets, and thus could confer an unfair competitive advantage on the parties competing with ExxonMobil in those markets.

9

ExxonMobil also objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

ExxonMobil further objects to this request as seeking information that is publicly available, e.g., the advisories issued by the CME and other institutions reflecting their belief that WTI contracts could trade at negative prices.

ExxonMobil also objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 5: Documents sufficient to show Communications between You and CME, NYMEX, or ICE relating to the May WTI Contract, including but not limited to: (i) notices by CME that the WTI Contract may trade at negative prices; (ii) correspondence relating to Your trading and/or rollover strategy with respect to the May WTI Contract; and (iii) correspondence relating to the April 20th Trading Day and/or the April 21st Trading Day.**

**RESPONSE:**  ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad and unduly burdensome in seeking documents that are publicly available or obtainable from another source (e.g., CME, NYMEX, or ICE) that is more convenient and less burdensome, especially considering that notices by CME are publicly available and/or can be obtained from CME.

In addition, ExxonMobil objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil.  *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i).  This concern is particularly stark given that the parties to this lawsuit compete in the same trading markets as ExxonMobil and are seeking documents speaking to ExxonMobil's confidential and internal trading and rollover strategies when trading in those markets, and thus could confer an unfair competitive advantage on the parties competing with ExxonMobil in those markets.

ExxonMobil also objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the

issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

ExxonMobil further objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

ExxonMobil also objects to this request as ambiguous and overbroad because "documents sufficient to show" is inherently subjective and subject to multiple interpretations, and therefore this request fails to describe with reasonable particularity the information sought.

Finally, ExxonMobil objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 6: Documents sufficient to show Your trading and/or rollover strategy with respect to the May WTI Contract and/or the April 20th Trading Day.**

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, vague, ambiguous, and failing to specify the requested materials with reasonable particularity in seeking "documents sufficient to show Your trading and/or rollover strategy." Given the objectionably broad definition of "Your"—which definition includes ExxonMobil Oil Corporation and all of its "affiliates, subsidiaries, parents, directors, divisions, subdivisions, groups, offices, branch offices, departments, employees, brokers, traders, consultants, Agents, representatives, accountants, predecessors or successors, and assigns wherever they may be situated"—responding to this request would require that ExxonMobil ascertain the personal knowledge and strategies from an incalculable number of unidentified persons and entities before ExxonMobil could even begin to identify and gather any potentially responsive materials.

In addition, ExxonMobil objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i). This concern is particularly stark given that the parties to this lawsuit compete in the same trading markets as ExxonMobil and are seeking documents speaking to ExxonMobil's confidential and internal views and strategies when trading in those markets, and thus could confer an unfair competitive advantage on the parties competing with ExxonMobil in those markets.

ExxonMobil also objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the

11

issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

ExxonMobil further objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 7:** **Documents sufficient to show the following with respect to any crude oil You purchased under the May WTI Contract: (i) whether You accepted or considered accepting delivery of any such crude oil; (ii) whether You stored or considered storing any such crude oil; and (iii) the amount of such crude oil that You accepted for delivery and/or stored, if any.**

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, vague, ambiguous, and failing to specify the requested materials with reasonable particularity in seeking "documents sufficient to show" whether "You" "considered accepting" or "considering storied" crude oil. Given the objectionably broad definition of "You"—which definition includes ExxonMobil Oil Corporation and all of its "affiliates, subsidiaries, parents, directors, divisions, subdivisions, groups, offices, branch offices, departments, employees, brokers, traders, consultants, Agents, representatives, accountants, predecessors or successors, and assigns wherever they may be situated"—responding to this request would require that ExxonMobil ascertain what an incalculable number of unidentified persons and entities may have "considered" before ExxonMobil could even begin to identify and gather any potentially responsive materials.

In addition, ExxonMobil objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i). This concern is particularly stark given that the parties to this lawsuit compete in the same trading markets as ExxonMobil and are seeking documents speaking to ExxonMobil's confidential and internal views and strategies when trading in those markets, and thus could confer an unfair competitive advantage on the parties competing with ExxonMobil in those markets.

ExxonMobil also objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the

12

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

ExxonMobil further objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 8: Documents sufficient to show Communications between You and any Third Parties relating to the May WTI Contract, including but not limited to Documents and Communications concerning the Third Parties' investments or holdings in the May WTI Contract.**

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, vague, ambiguous, and failing to specify the requested materials with reasonable particularity in seeking "documents sufficient to show" (which phrase is inherently vague and subjective) "Communications between You and any Third Parties "relating to the May WTI Contract." Given the objectionably broad definition of "You"—which definition includes ExxonMobil Oil Corporation and all of its "affiliates, subsidiaries, parents, directors, divisions, subdivisions, groups, offices, branch offices, departments, employees, brokers, traders, consultants, Agents, representatives, accountants, predecessors or successors, and assigns wherever they may be situated"—this request would sweep in every comment, however insignificant, that any ExxonMobil employee made regarding the May 2020 WTI contract, including remarks from employees who had no involvement (be it trading or otherwise) with that contract and were simply commenting based on public reporting surrounding the contract. As a practical matter, it would be nearly impossible to gather (much less review) these communications, which communications would be of no conceivable relevance to the lawsuit.

In addition, ExxonMobil objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i). This concern is particularly stark given that the parties to this lawsuit compete in the same trading markets as ExxonMobil and are seeking documents speaking to ExxonMobil's confidential and internal views and strategies when trading in those markets, and thus could confer an unfair competitive advantage on the parties competing with ExxonMobil in those markets.

ExxonMobil also objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

ExxonMobil further objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to TEX. R. EVID. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

Subject to these objections, ExxonMobil did not serve as a broker for third parties relating to the May 2020 WTI Contract, and thus ExxonMobil does not have any documents responsive to this request as it is interpreted by ExxonMobil.

**REQUEST FOR PRODUCTION NO. 9: Documents sufficient to show the following information relating to all Third Parties who traded or invested in the May WTI Contract through You: (i) the number and identity of any such Third Parties, (ii) the earnings or losses of such Third Parties in the May WTI Contract; and [sic] (i) the terms of any settlements or other agreements between You and any such Third Parties with respect to the May WTI Contract.**

**RESPONSE:** ExxonMobil incorporates its Preliminary Statement and Objections, as set forth above, as if fully restated in response to this request.

ExxonMobil objects to this request as overbroad, vague, ambiguous, and failing to specify the requested materials with reasonable particularity in seeking "documents sufficient to show" (which phrase is inherently vague and subjective) "the following information relating to all Third Parties who traded or invested in the May WTI Contract through You." ExxonMobil interprets this request as seeking information relating to transactions in which ExxonMobil acted in a broker-type capacity. ExxonMobil, however, did not serve as a broker for third parties relating to the May WTI Contract.

In addition, ExxonMobil objects to this request as seeking sensitive, confidential, and proprietary commercial information, and Defendants have not demonstrated that they can meet their burden in showing that the probative value of this sensitive information outweighs the harm disclosure would impose on ExxonMobil. *See, e.g.*, FED. R. CIV. P. 45(d) (3)(B)(i). This concern is particularly stark given that the parties to this lawsuit compete in the same trading markets as ExxonMobil and the unspecified third parties covered by this request, such that the information sought by this request confer an unfair competitive advantage on the parties when competing with ExxonMobil and the unspecified third parties in those markets.

ExxonMobil also objects to this request as overbroad, unduly burdensome, and seeking information that is beyond the scope of permissible discovery considering the importance of the issues at stake, the amount in controversy (a claim involving an alleged loss of $92,490), the parties' relative access to relevant information, the parties' resources, the importance of the

14

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

ExxonMobil further objects to the extent this request seeks information that is privileged from discovery pursuant to the attorney-client, work-product, trade secrets (subject to Tex. R. Evid. 507 or other applicable provisions), and other privileges.

Finally, ExxonMobil objects to this request to the extent it seeks to force ExxonMobil to create documents because such a request exceeds what is permissible under the Federal Rules of Civil Procedure.

Subject to these objections, ExxonMobil did not serve as a broker for third parties relating to the May 2020 WTI Contract, and thus ExxonMobil does not have any documents responsive to this request as it is interpreted by ExxonMobil.