# EXHIBIT 13

# Chapter 7
# DELIVERY FACILITIES AND PROCEDURES

## GENERAL

| | |
|---|---|
| 700. | SCOPE OF CHAPTER |
| 701. | DECLARATIONS OF FORCE MAJEURE |
| 702. | CLEARING MEMBER DUTIES TO THE CLEARING HOUSE |

## DELIVERY FACILITIES AND PROCEDURES

| | |
|---|---|
| 703. | DESIGNATION AND OBLIGATIONS OF METAL SERVICE PROVIDERS |
| | 703.A.  Conditions for Approval |
| | 703.B.  Load-Out |
| | 703.C.  Withdrawal or Revocation of Approved Status |
| 704. | STORAGE OF METALS |
| | 704.A.  Storage and Handling Charges |
| | 704.B.  Storage Limitations |
| 705. | METAL WARRANTS |
| | 705.A.  Procedures for the Issuance of Warrants |
| | 705.B.  Procedures for the Cancellation of Warrants |
| | 705.C.  Procedures for Insurance Claims |
| 706. | METAL DELIVERY PROCEDURES |
| | 706.A.  Location of Delivery of the Metal |
| | 706.B   Notice of Intention to Deliver |
| | 706.C.  Notice Day |
| | 706.D.  Settlement Price |
| | 706.E.  Delivery Day |
| | 706.F.  Settlement of Storage and Handling Charges |
| 707. | OBLIGATIONS IN METAL DELIVERY AND DISPUTE RESOLUTION |
| 708. | NEW YORK HARBOR ULSD AND RBOB GASOLINE DELIVERY TERMINALS |
| | 708.A.  Conditions for Approval |
| | 708.B.  Withdrawal or Revocation of Approved Status |
| 709.-713. | [RESERVED] |
| 714. | FAILURE TO DELIVER |
| 715. | FAILURE TO ACCEPT DELIVERY OR REMIT FULL PAYMENT |
| 716. | DUTIES OF CLEARING MEMBERS |
| 717. | [RESERVED] |
| 718. | CUSTOMER SUBSTITUTION IN THE EVENT OF CLEARING MEMBER BANKRUPTCY |
| 719. | INITIAL REGULARITY FOR DELIVERY AGAINST A NEW FUTURES CONTRACT |
| 720.-759. | [RESERVED] |
| 760. | DELIVERY PROCEDURES IN OTHER COMMODITIES |
| 761.-769. | [RESERVED] |
| 770. | DELIVERY OBLIGATION TRANSFER PROCEDURES |
| 771. | ALTERNATIVE NOTICE OF INTENTION TO DELIVER |

# INTERPRETATIONS & SPECIAL NOTICES
# RELATING TO CHAPTER 7

**PRECIOUS METALS – STORAGE AND HANDLING FEES**
**BASE METALS – STORAGE AND HANDLING FEES**
**PRECIOUS METALS – DEPOSITORIES AND WEIGHMASTERS**
**PRECIOUS METALS – ASSAYERS**
**PRECIOUS METALS – CARRIERS**
**GOLD (GC) – BRANDS**
**GOLD (4GC) – BRANDS**
**GOLD KILO (GCK) – BRANDS**
**SILVER – BRANDS**
**PLATINUM – BRANDS**
**PALLADIUM – BRANDS**
**BASE METALS – WAREHOUSES AND WEIGHMASTERS**
**BASE METALS – ASSAYERS**
**COPPER – BRANDS**
**ALUMINUM – BRANDS**
**LEAD – BRANDS**
**ZINC – BRANDS**
**ULSD & RBOB GASOLINE – NY HARBOR REGISTERED DELIVERY TERMINALS**

# Chapter 7

# DELIVERY FACILITIES AND PROCEDURES
## GENERAL

**700.**     **SCOPE OF CHAPTER**

Deliveries and delivery facilities shall be governed by this chapter and, where applicable, the chapter which includes the contract specifications for the commodities being delivered and such other requirements as the Exchange may prescribe.

For purposes of these Rules, unless otherwise specified, times referred to herein shall refer to and indicate New York time.

**701.**     **DECLARATIONS OF FORCE MAJEURE**

If a determination is made by the Chief Executive Officer, Chairman, Chief Operating Officer, or Chief Regulatory Officer, or their delegate, that delivery or final settlement of any contract cannot be completed as a result of Force Majeure, he shall take such action as he deems necessary under the circumstances, and his decision shall be binding upon all parties to the contract.

The Exchange shall notify the CFTC of the implementation, modification or termination of any action taken pursuant to this Rule as soon as possible after taking the action.

It shall be the duty of members, clearing members, regular facilities and metals' service providers to notify the Exchange of any circumstances that may give rise to a declaration of Force Majeure.

Nothing in this Rule shall in any way limit the authority of the Board of Directors to act in a Force Majeure situation pursuant to Rule 230.k.

**702.**     **CLEARING MEMBER DUTIES TO THE CLEARING HOUSE**

Every clearing member carrying open long or short positions shall present to the Clearing House each business day an accurate inventory of such open positions. The inventory of open long and short positions shall be reported to the Clearing House in such manner and at such times as the Clearing House may prescribe.

A clearing member, carrying an account that is required to make or accept delivery, agrees to guarantee and assume complete responsibility for the performance of all delivery requirements set forth in the Rules, including the requirement that delivery margin must be deposited with the Clearing House in such amounts and in such form as required by the Exchange.

In the event a clearing member fails to perform its delivery obligations to the Clearing House, such failure may be deemed a default pursuant to Rule 802. In a delivery failure, the Clearing House shall ensure the financial performance to the clearing member whose actions or omissions did not cause or contribute to the delivery failure (the "Affected Clearing Member"). In this regard, the Clearing House powers will include, but will not be limited to, the right to sell or liquidate the commodity subject to delivery and to distribute the proceeds as appropriate. "Financial performance" means payment of the commercially reasonable costs of the Affected Clearing Member related to replacement of the failed delivery and includes any related fines, penalties and fees incurred by the Affected Clearing Member and does not include physical performance or legal fees.

An Affected Clearing Member seeking financial performance from the Clearing House shall provide prompt notice to the Clearing House of the delivery failure and a good faith estimate of any financial performance being sought no later than 1 hour after the delivery deadline for the respective product, which may be extended upon request by the Affected Clearing Member by the Global Head of Clearing & Post-Trade Services or their designee due to extenuating circumstances. As soon as reasonably practicable thereafter, the Affected Clearing Member seeking financial performance shall provide to the Clearing House a detailed statement, with supporting documentation, of all amounts sought.

**DELIVERY FACILITIES AND PROCEDURES**

**703.**         **DESIGNATION AND OBLIGATIONS OF METAL SERVICE PROVIDERS**

**703.A.**   **Conditions for Approval**

Depositories for the storage of gold, silver, platinum and/or palladium, and warehouses for the storage of aluminum, copper, lead and/or zinc, (hereafter "facilities") may be declared regular for delivery with the approval of the Exchange. Persons operating facilities who desire to have such facilities made regular for delivery under the Rules of the Exchange shall make application for an initial Declaration of Regularity on a form prescribed by the Exchange prior to May 1 of an odd-numbered year, for a two-year term beginning July 1of that year, and at any time during the current term for the balance of that term.

Applications for a renewal of regularity shall be made prior to May 1 of odd-numbered years for the respective years beginning July 1 of those years, and shall be on the same form.

Facilities that desire to increase their regular capacity during a current term shall make application for the desired amount of total regular capacity on the same form.

Initial regularity and increases in regularity for delivery against a listed futures contract shall be effective either thirty days after the Exchange posts a notice that a bona fide application has been received or the day after the application is approved by the Exchange, whichever is later.

Regular facilities that wish to have their regular capacity space decreased shall file with the Exchange a written request for such decrease and such decrease shall become effective once a notice has been posted by the Exchange.

The Exchange may establish such requirements and conditions for approval of regularity as it deems necessary. The application for regularity prescribed by the Exchange shall set forth conditions of regularity as well as other agreements with which the operator of the regular facility shall comply. In addition to any conditions and agreements contained in such application or in the relevant product chapter, the following shall constitute conditions for regularity and requirements with which the operator of a regular facility shall comply:

(1) The facility shall provide such guarantees, bonds or other financial instruments to the Exchange as may be required to guaranty the performance of its obligations pursuant to these Rules and any conditions set forth in the conditions for approval.

(2) On an annual basis, the facility shall provide the Exchange with copies of audited financial statements of the facility, and its parent company (as applicable) within 90 days of the firm's year end. Financial statements must be audited in accordance with U.S. Generally Accepted Accounting Principles or other international financial standards as deemed acceptable by the Exchange. Additionally, the facility must provide the Exchange with notice of any substantial reduction in capital as compared to the most recent filing of a financial report.

(3) No depository or copper warehouse shall be declared regular for the storage of a metal unless it has in force and effect all-risk insurance against loss of the metal in such amount, issued by such insurance companies, and upon such terms and conditions as are satisfactory to the Exchange. No aluminum, lead or zinc warehouse shall be declared regular for the storage of metal unless it has in force and effect warehouseman's legal liability insurance issued by such insurance companies and upon such terms and conditions as are satisfactory to the Exchange.

All policies evidencing such facility insurance shall provide for at least ninety (90) days prior written notice, to the Exchange, of cancellation, change in the policy terms and/or premiums. The continued maintenance of such facility insurance shall be a condition to the continued declaration of regularity. On an annual basis, all facilities must provide to the Exchange documents sufficient to satisfy the Exchange that the required insurance is in full force and effect.

(4) The facility shall be open at all times to inspection by any representative of the Exchange, the CFTC or the U.S. Department of Justice. The facilities shall make such reports, keep such records, and permit such visitation as the Exchange and/or the CFTC may prescribe. Such books and records shall be kept for a period of five (5) years from the date thereof or for a longer period if the Exchange and/or the CFTC shall so direct, and such books and records shall be available to inspection by any representative of the Exchange, the CFTC or the U.S. Department of Justice.

(5) The facility shall permit the Exchange, at any time, to examine any and all books and records of the facility, for the purpose of ascertaining the stocks relating to metal which

may be on hand. The Exchange shall have the authority to determine the quantity of metal in the facility and to compare the books and records of the facility with the records of the Exchange.

(6) The facility, at its sole cost and expense, shall have conducted by an independent auditor an annual audit of inventory and inventory reporting to the Exchange which shall be in compliance with the procedures established by the Exchange. Each audit report shall be filed with the Exchange within thirty (30) days of the date of the completion of the audit.

(7) The facility shall be required to report inventory to the Exchange as prescribed herein. The inventory shall include eligible, pledged and registered metal. Eligible metal shall mean all such metal that is acceptable for delivery against the applicable metal futures contract for which a warrant has not been issued. Registered metal shall mean an eligible metal for which a warrant has been issued. Pledged metal shall mean registered metal for which the warrant that has been issued is on deposit at the Clearing House as performance bond. All information pursuant to this section shall be transmitted to the Registrar no later than 2:00 p.m., or as prescribed by the Registrar's Office, for gold stock for delivery against the Gold Kilo futures contract, 6:00 p.m. local Hong Kong time, on the business day following the day on which the facility comes into possession of relevant information. In addition to containing all relevant information for the preceding business day, notifications pursuant to this section sent by 2:00 p.m., for gold stock for delivery against the Gold Kilo futures contract, 6:00 p.m. local Hong Kong time, on a Tuesday shall include all relevant information for the last business day as well as the Saturday and Sunday immediately preceding the Tuesday on which the notification is made.

In addition, on a daily basis, the facility shall provide, in an Exchange-approved format, the following information regarding its stocks:

   a. The total quantity of registered metal stored at the facility.
   b. The total quantity of pledged metal stored at the facility.
   c. The total quantity of eligible metal stored at the facility.
   d. The quantity of eligible metal and registered metal received and shipped from the facility.

(8) All officers, directors, employees and agents of the facility shall be prohibited from revealing any information regarding customers who have dealings with the facility or regarding metal deposits or withdrawals to any persons or firms except as permitted by the Exchange.

In the event the facility or any of its respective parent, subsidiaries or affiliates, engage in any trading activity, whether directly or indirectly, in the metals contract(s) for which the facility has received approval for regularity, the facility shall institute controls to protect the confidentiality of the users of the facility.

On an annual basis, the facility, at its sole cost and expense, shall have conducted by an independent auditor acceptable to the Exchange, an annual audit of the controls in place between the regular facility and any party who engages in trading activity, whether directly or indirectly affiliated with the facility. Such audit shall be carried out in accordance with such standard as deemed acceptable by the Exchange. Such audit shall be filed with the Exchange upon completion of the audit, not to exceed 90 days from the firm's year-end.

(9) The facility shall not engage in unethical or inequitable practices, and shall comply with all applicable federal, state and local laws and regulations and the Rules of the Exchange.

(10) The facility is not required to own the storage space and may lease the storage space upon such terms and conditions as are satisfactory to the Exchange. The facility may also enter into a service arrangement pursuant to which an agent or contractor performs the daily operations of the storage facility upon such terms and conditions as are satisfactory to the Exchange. The facility shall be responsible for the conduct of its agents and contractors.

(11) The depository shall provide a fully secured indoor facility for the storage of precious metal, as acceptable to the Exchange. The depository for gold, platinum and palladium must be accessible by armored car. The depository for gold deliverable against the Gold futures (GC) contract must qualify and be designated a weighmaster and must be located within a 150-mile radius of the City of New York. The depository for gold deliverable against the Gold (Enhanced Delivery) futures (4GC) contract must qualify and be designated a weighmaster and must be located within a 150-mile radius of the City of New York or in London, UK. The depository for gold deliverable against the Gold Kilo futures

(GCK) contract must be located in Hong Kong Special Administrative Region of the People's Republic of China.

(12) The warehouse regular for delivery of copper, lead and zinc shall provide a fully secured indoor facility for the storage of copper, lead and zinc, as acceptable to the Exchange. The warehouse regular for delivery of copper must have direct unobstructed access to both a truck bay and rail. The warehouse regular for delivery of aluminum must consist of designated indoor, outdoor, or both indoor and outdoor fully secured storage facilities. The warehouse regular for delivery of aluminum, lead and zinc must have direct unobstructed access for loading to truck and/or rail.  The warehouse regular for delivery of aluminum, lead and zinc must also qualify and be designated a weighmaster.

(13) Copper warehouses must be located in the Continental United States. Zinc, aluminum and lead warehouses can be located in the Continental United States, the European Union and/or Asia.

(14) The facility shall promptly advise the Exchange of any damage to metal held in store by it, whenever such damage shall occur to an extent that will render the metal undeliverable.

The Exchange, in its sole discretion, may determine not to approve facilities for regularity, or for increases in regular capacity of existing regular facilities, regardless of whether such facilities meet the preceding requirements and conditions. Some factors that the Exchange may, but is not required to, consider in exercising its discretion include, among others, whether warrants issued by such facilities, if tendered in satisfaction of futures contracts, might be expected to adversely affect the price discovery function of futures contracts or impair the efficacy of futures trading in the relevant market, or whether the currently regular capacity provides for an adequate deliverable supply.

The Exchange shall designate and approve the metal brands deliverable against the metals futures contracts. Such brands must be produced by an Exchange approved producer and display the unique brand mark of the approved producer's specified facility that created such brand of metal.

The Exchange shall designate and approve metal producers whose function shall be a refiner or smelter whose products meet all Exchange brand requirements and metals specifications as prescribed herein or in the respective metal futures contract rule chapters and are acceptable for delivery against the applicable metal futures contract.  A current gold producer and current silver producer must also comply with current London Bullion Market Association (LBMA) Responsible Gold Guidance and Responsible Silver Guidance, respectively, in order for such gold producer and silver producer to obtain and maintain Exchange approval for delivery against any of the Exchange's physically delivered gold and silver futures contracts.  A current platinum producer and current palladium producer must also comply with current London Platinum and Palladium Market (LPPM) Responsible Platinum Guidance and Responsible Palladium Guidance, respectively, in order for such platinum and palladium producer to obtain and maintain Exchange approval for delivery against any of the Exchange's physically delivered platinum and palladium futures contracts.

The Exchange shall designate assayers for metals deliverable against the metals futures contracts.  Exchange approved assayers shall verify the metallurgical assay of Exchange approved metal brands in order to maintain the integrity of said brands deliverable against the metal futures contracts. In the event that the metallurgical assay of any brand shall be questioned, the Exchange shall refer the matter to said assayers.

The Exchange shall designate and approve an armored car company as a carrier whose function is to provide for the secure transportation of gold, platinum and palladium and shall maintain a chain of integrity for each such metal, as described in the applicable metals futures contract rule chapters.

The Exchange shall designate and approve a weighmaster whose function is to verify the weight of registered aluminum, copper, lead, gold, silver and zinc.

A service provider shall mean an assayer, carrier, producer, depository, warehouse or weighmaster designated, approved or declared regular by the Exchange.  The Exchange, in its sole discretion, may determine not to approve service providers regardless of whether such service providers meet the preceding requirements and conditions.

Service providers shall be subject to the Rules of the Exchange, the disciplinary procedures set forth in Chapter 4, and the arbitration procedures set forth in Chapter 6, and shall abide by and comply with the terms of any disciplinary decision imposed or any arbitration award issued against it pursuant to the Rules of the Exchange.

Service providers shall consent to the disciplinary jurisdiction of the Exchange for five (5) years after such regularity lapses, for conduct which occurred while the facility was regular.

The service provider shall immediately notify the Exchange, in writing of any actual change in control or ownership.

The service provider represents and warrants that all of the information in its application for approval or regularity is accurate. The service provider agrees that it has a continuing obligation to promptly notify the Exchange of any change in the information contained therein.

**703.B.   Load-Out**

The facility represents and warrants that it shall schedule all shipments into or out of the facility on a first-come, first served, non-discriminatory basis and that it shall not constrain or promote the movement of registered metal and eligible metal into or out of the facility by:

1. Giving exceptional inducements or imposing unreasonable charges for depositing, storage or removal of metal into or out of the facility; or

2. Taking or failing to take any action that affects a customer's ability to schedule the delivery or removal of metal from the facility.

3. Failure to comply with the load out requirements as prescribed herein may subject a facility to Exchange disciplinary action.

A. Load-Out Procedures for Precious Metals

In the event that a depository has not permitted the load out of metal represented by a NYMEX or COMEX cancelled warrant within five (5) business days after such warrant has been cancelled for load out (all applicable charges paid) then the depository shall immediately notify the Exchange, in writing, of the reason(s) for the delay. Upon receipt of such notification, the Exchange, at its discretion, may direct the depository not to accept additional metal for deposit until the Exchange directs it to do otherwise.

With the exception of gold deliverable against the Gold Kilo futures (GCK) contract, in the event that loading orders for precious metal represented by a NYMEX or COMEX cancelled warrant are received by the depository by the 20th day of the month, all precious metal represented by a NYMEX or COMEX cancelled warrant must be released for shipment no later than the close of business on the last day of that month, provided, however, that all storage charges are paid and warrant holder has presented the depository with all documents necessary to establish good title. If the depository fails to comply with the preceding sentence, the depository shall not charge the warrant holder for additional storage charges, provided, however, that the delay was not caused by the holder of a NYMEX or COMEX warrant cancelled for load out or their agent.

For load-out of gold deliverable against the Gold Kilo futures (GCK) contract, the depository is required to ship out of the depository gold at a minimum guaranteed daily load out rate of 2,000 gold bars each weighing 1 kilogram (equivalent to 2,000 contract units) per day for each business day, unless such day is a Hong Kong general holiday. If the depository fails to comply with the gold delivery and load-out Rules as prescribed above, the depository shall not charge the warrant holder for additional storage charges, provided, however, that the delay was not caused by the holder of a COMEX warrant cancelled for load out or their agent.

B. Load-Out Procedures for Base Metals

In the event that a warehouse has not permitted the load out of aluminum, lead or zinc represented by a COMEX cancelled warrant within twenty (20) business days (five (5) business days for copper) after such warrant has been cancelled for load out (all applicable charges paid) or in the event the warehouse has not met the minimum daily load out requirement, then the warehouse shall immediately notify the Exchange, in writing, of the reason(s) for the delay. Upon receipt of such notification, the Exchange, at its discretion, may direct, in writing, the warehouse not to accept additional base metal for deposit until the Exchange directs it to do otherwise.

If the warehouse fails to comply with the delivery and load-out Rules as prescribed herein, the warehouse shall not charge the warrant holder for additional storage charges, provided, however, that the delay was not caused by the holder of a COMEX warrant cancelled for load out or their agent.

The warehouse shall be required to load out metal beginning on the third business day following receipt of loading orders or after a conveyance of the type identified in the

loading orders is constructively placed, whichever occurs later. For load out by rail, the warehouse shall be required to load out metal beginning on the third business day following receipt of loading orders or one business day after a rail car is constructively placed, whichever occurs later. Loading orders must be received no later than five business days after warrants are cancelled for load out. If loading orders are not received within five business days after warrants are cancelled for load out, the load out of such metal shall not be subject to the load-out Rules herein.

The regular warehouse is required to ship out of the warehouse metal at a minimum guaranteed daily load out rate of 2% of total inventory, with a minimum daily load out rate of 1,000 metric tons, for each business day (via primary conveyance) for aluminum. In addition, the warehouse shall not be required to exceed the minimum daily load out rate of 500 metric tons for zinc (via primary conveyance), 500 short tons for copper (truck and rail conveyance combined), unless otherwise prescribed in the Interpretations & Special Notices Related to Chapter 7, or 500 metric tons for lead (via primary conveyance). Preference is given to load out of metal represented by COMEX cancelled warrants (via primary conveyance for aluminum, lead and zinc). In the event the warehouse has load out orders for COMEX cancelled warrants representing multiple metal types, the warehouse shall load out each metal concurrently on a pro rata by commodity basis at their prescribed minimum load out rate. If the pro rata exceeds the minimum load out rate, the warehouse shall only be required to load out at the prescribed minimum load out rate. Total inventory shall be defined as the sum of all COMEX registered and eligible aluminum, lead, zinc and copper stored at the regular warehouse as reported to the Exchange on the first business day of the month.

The warehouse shall transmit to the Registrar by 11:00 a.m. Central Prevailing Time, the name, location of regular facility, the number of warrants cancelled for load out (via primary conveyance for aluminum, lead and zinc) and associated loading orders on a daily basis. The Registrar shall maintain a current record of the number of warrants cancelled for load out (via primary conveyance for aluminum, lead and zinc) and shall be responsible for posting this record on the Exchange website.

Alternate Load-Out Instructions via Alternate Conveyance for Aluminum, Lead and Zinc: A party may elect to load out via an alternate conveyance, if available. Load-out via alternate conveyance shall be subject to the minimum guaranteed daily load out rate as published under the Interpretations & Special Notices Related to Chapter 7 contingent on any pending load-out orders submitted prior to the load-out order via alternate conveyance and shall be conducted on a first-come, first served, non-discriminatory basis.

### 703.C. Withdrawal or Revocation of Approved Status

The Business Conduct Committee may revoke a declaration of regularity whenever a regular facility fails to comply with the conditions specified in this Chapter, any other conditions to which it has agreed in its application for regularity, or any other Exchange Rules.

Unless a shorter notification period is otherwise authorized by the Exchange, a facility shall give six (6) months prior written notice to the Exchange prior to withdrawing from regularity.

If the designation of a facility as regular is withdrawn or revoked, a notice shall be posted announcing such withdrawal or revocation and the period of time, if any, during which the warrants issued by such facility shall thereafter be deliverable in satisfaction of futures contracts under the Rules.

If the facility withdraws or is revoked, the facility shall pay the cost of transferring all registered metal stored at the facility, to the closest facility having ample space to accept the registered metal. If any of the owners of the registered metal elect to have the registered metal transferred to a facility for metal other than as described in the preceding sentence, facility shall comply with the transfer request provided, however, that facility shall obtain reimbursement from the owner for costs and expenses in excess of those which it would incur in effecting the transfer pursuant to the preceding sentence.

The Exchange, in its sole discretion, may revoke from approved status any assayer, brand, carrier, producer or weighmaster.

## 704. STORAGE OF METALS

### 704.A. Storage and Handling Charges

In the event that a depository or warehouse wishes to change its maximum fees, the depository or warehouse shall make application for the desired change on a form prescribed

by the Exchange. The Exchange, in its sole discretion, may determine to not approve the requested changes.

Increases to maximum fees for a depository or warehouse shall be effective ninety (90) days after the Exchange posts a notice that a bona fide application has been approved.

The maximum storage and delivery out charges by a depository shall not exceed the following:

|  | Maximum Storage | Maximum Delivery Out |
| --- | --- | --- |
| Gold (GC) (per contract) | $15.00 | $35.00 |
| Gold (Enhanced Delivery) (4GC) (per contract) | $15.00 | $35.00 |
| Gold Kilo (GCK) (per contract) | $6.50 | $12.50 |
| Silver (SI) (per bar) | $8.50 | $35.00 |
| Platinum (PL) (per contract) | $20.00 | $30.00 |
| Palladium (PA) (per contract) | $20.00 | $30.00 |

For larger platinum and palladium units (as defined in NYMEX Chapter 105 and 106), respectively), the maximum storage and delivery out charges shall be pro-rated from the above table based on the weight of the larger platinum or palladium unit. For 400 troy ounce bars deliverable against the Gold (Enhanced Delivery) futures contract, the maximum storage and delivery charges shall be pro-rated from the above table.

### 704.B.   Storage Limitations

In the event a facility becomes unable to accept for delivery any metal, whether due to capacity limitations or any other reason, the facility shall immediately notify the Exchange, in writing, of such circumstance, describing in detail the relevant metal(s) affected and the status of such metal(s) stored therein.

The facility shall not make a change that affects its ability or capacity to accept, process, ship or store metal without ninety (90) days prior written notice to the Exchange.

### 705.   METAL WARRANTS

#### 705.A.   Procedures for the Issuance of Warrants

A warrant shall mean a document of title under Article 7 of the Uniform Commercial Code ("UCC") issued by a facility demonstrating that the referenced quantity of the covered metal, stored in the facility referenced thereon, meets the specifications of the applicable metal futures contract.

All warrants issued by a facility must be issued in the name of the clearing member (warrant holder) and must be in a format approved by the Exchange. A clearing member shall retain documentation that allows the clearing member to take possession of metal and transfer possession to the owner of the metal. Warrants shall be lettered or numbered consecutively by each facility and no two warrants for the same metal shall bear an identical combination of letters and/or numbers. If letters are used, they must not exceed three (3) characters and if used in combination with numbers, they must precede the numbers. The numbers must not exceed 7 digits.

1. Within three (3) business days from receipt of any metal at a facility, the facility must (a) determine such metal's eligibility, (b) advise the owner if the metal is determined to be not eligible, and (c) if requested by the owner and provided the metal meets the contract specifications, issue a warrant. In addition, upon receipt of the 100 troy ounce gold bar by the depository for delivery against the Gold futures contract or Gold (Enhanced Delivery) futures contract, the depository shall weigh each 100 troy ounce gold bar in the lot measured to 1/100 of a troy ounce (two decimal points). In accomplishing such measurement, each bar shall be weighed to the nearest 1/1000 of a troy ounce (three decimal points); weights of 4/1000 of a troy ounce or less shall be rounded down to the nearest 1/100 of a troy ounce and weights of 5/1000 of a troy ounce or more shall be rounded up to the nearest 1/100 of a troy ounce. If, due to capacity limitations or for any other reason, a facility is unable to meet such requirements, the facility shall notify the Exchange immediately and shall describe the reason(s) for such delay. Each 400 troy ounce bar must be eligible for settlement in the wholesale London bullion market.

2. In issuing a warrant, facility shall be responsible for (a) verifying that the metal meets all of the specifications for the product in accordance with the product's terms and conditions as stated in the Exchange Rules, (b) verifying that the metal is of an approved brand, and (c) entering all applicable information into the electronic delivery system. Additionally, in issuing a warrant for delivery against the Gold Kilo futures contract, the depository must confirm that the fineness, serial number and weight inscribed on the 1 kilogram gold bar match the fineness, serial number and weight of the gold indicated on the bar list provided by the approved producer.

3. A warrant shall be an electronic document, that is a transferable record under the Uniform Electronic Transactions Act or any comparable applicable law, and a document of title under Article 7 of the UCC, in a form approved by the Exchange and issued in compliance with this Rule, and shall be supported by such paper or other tangible documents as specified in this Rule. The facility shall enter in the electronic delivery system a reference to each paper or other tangible document(s) that is related to the warrant as specified in this Rule.

4. Except as permitted in the contract specification, warrants shall not be issued for more than or less than one contract unit. Each contract unit shall be delivered from a single facility. A warrant issued for aluminum shall be from a single brand and shall be made up exclusively of the deliverable grades in one of the three shapes as prescribed in the Aluminum futures contract Rules. A warrant issued for copper, lead or zinc shall be from a single brand. A warrant may be issued for gold, silver, platinum or palladium that co-mingles brands, provided such co-mingled brands are stored within the same facility.

5. A warrant shall be of unlimited duration and remain valid until cancelled by the facility that issued it.

6. Notwithstanding anything to the contrary herein, any warrant that is on deposit with the Clearing House as performance bond pursuant to Rule 820 may not be used to satisfy any delivery obligations hereunder.

7. The facility shall be solely responsible for insuring that no duplicate warrants are issued, printed or released by it.

8. In the event that any paper or other tangible document that supports a warrant has been damaged, lost, stolen or destroyed, facility shall issue a replacement document upon completion of its procedures for the replacement thereof.

**705.B.   Procedures for the Cancellation of Warrants**

A warrant may be cancelled only by the facility that issued it and only upon endorsement from the clearing member to such facility in accordance with these Rules. Notwithstanding the foregoing, a warrant that is on deposit with the Clearing House as performance bond may not be cancelled until the warrant is released back to the Clearing Member with the consent of the Clearing House.

Upon request to the clearing member by the owner of the metal for delivery of a metal, the clearing member shall endorse in the electronic delivery system with delivery instructions ("the account of") and shall, upon request by the owner, issue to the owner a physical confirmation of such endorsement.

A facility shall have and maintain in fireproof secure document storage until five (5) years following cancellation of the applicable warrant, any documentation associated with such cancelled warrant as required by the metal futures contract.

**705.C. Procedures for Insurance Claims**

A service provider shall promptly notify the Exchange of any claims it files against the insurance policy it maintains as a condition of regularity with respect to metal covered by an outstanding warrant issued under Exchange Rule 705. The service provider shall also promptly notify the Exchange of any proceeds that it receives from any such claim.

Prior to using or disbursing the proceeds received, the service provider shall provide the Exchange with the opportunity to prescribe the manner in which the proceeds or a portion thereof are to be used or disbursed by the service provider to compensate the owner of registered metal for the loss of metal.

If the Exchange prescribes the manner in which such proceeds are to be used or disbursed, then the service provider shall use or disburse the proceeds solely in the manner prescribed by the Exchange. To the extent any disbursement is prescribed by the Exchange, the service provider shall make payment to the owner of the registered metal or, at the service provider's discretion, to such owner's Clearing Member.

Notwithstanding the above, the Exchange may in its sole discretion determine not to prescribe the manner in which such proceeds or a portion thereof are to be used or disbursed.

## 706.  METAL DELIVERY PROCEDURES

Metal delivery procedures contained herein shall apply to all physically delivered metals contracts with the exception of gold deliverable against the Gold Kilo Futures contract. Delivery procedures for gold deliverable against the Gold Kilo Futures contract are provided in Chapter 114.

A short clearing member may only commence the delivery procedures as detailed below with respect to a warrant that has been registered into the electronic delivery system. The delivery procedures for metals are as follows:

**706.A.  Location of Delivery of the Metal**

1. Delivery of a metal shall be made from the short clearing member's choice of a facility.
2. Except as otherwise provided in the Rules for each metal, all duties, entitlements, taxes, fees and other charges imposed prior to delivery on or in respect to the product shall be paid by the short clearing member. Delivery shall be made in accordance with applicable Federal, State and local laws.

**706.B.  Notice of Intention to Deliver**

1. Where any metal is sold for delivery in a specified month, delivery of such metal may be made by the seller upon such business day during the designated delivery period as the seller may select and, if not previously delivered, delivery must be made upon Last Delivery Day as prescribed by the Rules of the Exchange.

    A seller obligated or desiring to make delivery of a metal shall provide the Clearing House with a delivery notice in the form and manner specified by the Clearing House.

    Where a clearing firm has an interest both long and short for accounts on its own books, it must tender to the Clearing House such notices of intention to deliver as it receives from its accounts that are short. No office deliveries may be made by clearing members.

    Unless a different time is prescribed by the Rules pertaining to a particular metal, delivery notices must be delivered to the Clearing House by 7:00 p.m. on intent day (business day immediately prior to the notice day) except that, on the last intent day of the delivery month, delivery notices of intention may be submitted to the Clearing House until 1:00 pm on last intent day. The last intent day shall be defined as the business day immediately preceding the last business day of the delivery month. The Clearing House shall, on the same day, assign the deliveries to eligible buyers.

    Upon determining the buyers obligated to accept deliveries tendered by issuers of delivery notices, the Clearing House shall promptly furnish to each issuer the names of the buyers obligated to accept delivery for each metal for which a notice was submitted and shall also inform the issuer of the number of contracts for which each buyer is obligated.

2. The Notice of Intention to Deliver is not transferable.

#### 706.C.   Notice Day

1. Notice Day shall be the day on which an Assignment Notification is issued by the Clearing House to the long clearing member and the short clearing member.  The first day during which an Assignment Notification can be issued shall be the last business day of the month prior to the delivery month and shall be referred to as "First Notice Day". The last day during which an Assignment Notification can be issued shall be the second last business day of the delivery month and shall be referred to as "Last Notice Day".

2. The Assignment Notification shall specify the parties matched for delivery and the number of contracts to be delivered. The invoice shall specify the brand, the warrant number, the weight, the facility in which the metal is stored, the name of the short clearing member, the name of the long clearing member, and the price of the metal for each corresponding warrant.

3. The Assignment Notification shall be issued by the Clearing House to the long clearing member and the short clearing member upon completion of assignment.

4. The Assignment Notification is not transferable.

#### 706.D.   Settlement Price

The settlement price at the close of business on the day the Notice of Intention to Deliver is provided to the Clearing House shall be the basis for delivery. In the event the Notice of Intention to Deliver is provided on the next to last business day of the delivery month, the settlement price shall be the settlement price at the close of business on the third to last business day (the previous day).

#### 706.E.   Delivery Day

The day on which the long clearing member takes possession of metal through its receipt of the warrant for the metal shall be referred to as "Delivery Day." Delivery may take place on any business day beginning on the first business day of the delivery month or any subsequent business day of the delivery month, but no later than the last business day of the current delivery month.  Delivery payment will be made during the 7:45 a.m. collection cycle, or such other time as designated by the Clearing House.  Thus, the cost of delivery will be debited or credited to the clearing firm's settlement account.  Long clearing members obligated to accept delivery must take delivery and make delivery payment and short clearing members obligated to make delivery must make delivery during the 7:45 a.m. settlement process, or at such other time designated by the Clearing House, on the day of delivery, except on banking holidays when delivery must be taken or made and delivery payment made during the 7:45 a.m. settlement process, or such other time designated by the Clearing House, on the next banking business day.  Adjustments for differences between contract prices and delivery prices established by the Clearing House shall be made with the Clearing House in accordance with Exchange Rules, policies and procedures.  Ownership of metal passes from the seller to the buyer upon the buyer's delivery payment.

#### 706.F.   Settlement of Storage and Handling Charges

All metals must be delivered to the long clearing member with handling and storage charges paid up to and including the day of delivery, and the long clearing members may require the short clearing member to furnish satisfactory proof of payment thereof. Any storage charges prepaid by the short clearing member for a period extending beyond the Delivery Day (but not in excess of 30 days) shall be refunded by the long clearing member to the short clearing member on a pro rata basis for the unexpired term and an adjustment made upon the invoice. All storage and handling charges for all metals must be in U.S. Dollars. Where "in and out labor" charges have been paid as evidenced by the warrant receipt, or otherwise, the short clearing member shall be entitled to charge the long clearing member for one-half of such "in and out labor" charges; in other words, the long clearing member will have to assume the "out labor" charges.

### 707.   OBLIGATIONS IN METAL DELIVERY AND DISPUTE RESOLUTION

1. By the tender of a warrant for a metal duly endorsed for delivery in fulfillment of a metal futures contract, the service provider shall be deemed to warrant that the metal meets the deliverable product specifications set forth herein and in the applicable metal futures contract rule ("Delivery Warranty"). Such Delivery Warranty shall remain in effect through successive endorsements of the warrant for delivery on metal futures contracts. The Delivery Warranty shall continue for the benefit of a clearing member who shall have taken delivery of the metal in fulfillment of the metal futures contract(s), or in favor of such clearing member's immediate customer.

2. In the event that a clearing member or customer shall claim a breach of the Delivery Warranty, the metal shall be immediately submitted to an assayer for sampling and assaying. The expense of sampling and assaying shall, in the first instance, be borne by the claimant. If the assayer shall determine a deficiency in quality, the claimant shall have the right to recover the difference in the sampling and assaying and any cost of replacement of the metal. The claimant may, at his option, proceed directly against the service provider of the metal, as shown on the warrant upon an Exchange delivery without seeking recovery from the immediate short clearing member of the metal futures contract. If the service provider of the warrant satisfies the claim, intervening short clearing members will be thereby discharged from liability to the claimant. If the claimant seeks recovery from the immediate short clearing member, and his claim is satisfied by such short clearing member, the party thus satisfying the claim will have a similar option to claim recovery directly from the original short clearing member of the warrant or from the party's immediately preceding short clearing member. Such claims as are in dispute between members of the Exchange shall in each case be submitted to arbitration under the Rules of the Exchange.

3. The liability of a short clearing member of a warrant as provided herein shall not be deemed to limit the rights of such short clearing member against any person or party for whose account the short clearing member acted in making delivery on a metal futures contract, or any facility that warranted the metal for delivery of said metal futures contract. If it shall be determined in such arbitration proceeding that any short clearing member of a warrant or the person or party for whom such short clearing member acted was aware of the breach of the Delivery Warranty or was involved in a plan or arrangement with the original short clearing member (or his customer) to place such metal not meeting the deliverable product specifications set forth herein and in the applicable metal futures contract rule in a facility for use in deliveries of metal futures contracts, such short clearing members shall not be entitled to recover from any prior short clearing member for the breach of a Delivery Warranty.

4. The liability of a short clearing member of a warrant as provided herein shall not be deemed to limit the rights of such short clearing member against any facility that warranted the metal for delivery.

5. Any claim for damages arising between a long clearing member and a short clearing member, as a result of a delivery pursuant to this Chapter, shall be governed by the arbitration Rules of the Exchange.

6. All participants in the registration and delivery of metal including any facility, clearing member and owner of registered metal acknowledge and agree that (i) any Exchange, Clearing House or facility electronic documentation and record in connection with registering metal and transferring warrants shall have the same validity as its paper equivalent, (ii) such participants shall not contest the validity of such electronic documentation and records and (iii) all such electronic documentation and records shall be admissible in court or other tribunal as evidence without dispute by any participant.

### 708. NEW YORK HARBOR ULSD AND RBOB GASOLINE DELIVERY TERMINALS

#### 708.A. Conditions for Approval

New York Harbor ULSD and RBOB Gasoline terminals may be declared regular for delivery with the approval of the Exchange. Persons operating terminals who desire to have such terminals made regular for delivery under the Rules of the Exchange shall make application for an initial Declaration of Regularity on a form prescribed by the Exchange prior to May 1 of an even-numbered year, for a two-year term beginning July 1of that year, and at any time during the current term for the balance of that term.

Applications for a renewal of regularity shall be made prior to May 1 of even-numbered years for the respective years beginning July 1 of those years, and shall be on the same form.

Initial regularity and increases in regularity for delivery against a listed futures contract shall be effective either thirty days after the Exchange posts a notice that a bona fide application has been received or the day after the application is approved by the Exchange, whichever is later.

Regular terminals that wish to have their regular capacity space decreased shall file with the Exchange a written request for such decrease and such decrease shall become effective once a notice has been posted by the Exchange.

The Exchange may establish such requirements and conditions for approval of regularity as it deems necessary. The application for regularity prescribed by the Exchange shall set forth

conditions of regularity as well as other agreements with which the operator of the regular terminal shall comply. In addition to any conditions and agreements contained in such application or in the relevant product chapter, the following shall constitute conditions for regularity and requirements with which the operator of a regular terminal shall comply:

1. Recordkeeping. Terminals shall make such reports, keep such records, and permit such visitation as the Exchange and/or the CFTC may prescribe. Such books and records shall be kept for a period of five (5) years from the date thereof or for a longer period if the Exchange and/or the CFTC shall so direct, and such books, records and terminals shall be open at all times to inspection by any representative of the Exchange, the CFTC or the U.S. Department of Justice.

2. The terminal shall not engage in unethical or inequitable practices, and shall comply with all applicable Federal, State and local laws and regulations and the Rules of the Exchange.

3. Terminals shall be subject to the Rules of the Exchange, the disciplinary procedures set forth in Chapter 4, and the arbitration procedures set forth in Chapter 6, and shall abide by and comply with the terms of any disciplinary decision imposed or any arbitration award issued against it pursuant to the Rules of the Exchange.

4. Terminals shall consent to the disciplinary jurisdiction of the Exchange for five (5) years after such regularity lapses, for conduct which occurred while the terminal was approved.

5. The terminal shall promptly notify the Exchange of any damage or alteration to the terminal that will hinder the terminal from performing its obligations with respect to delivery of product.

6. The terminal shall immediately notify the Exchange, in writing, of any actual change in control or ownership.

7. The terminal represents and warrants that all of the information in its application for regularity is accurate. The terminal agrees that it has a continuing obligation to promptly notify the Exchange of any change in the information contained therein.

The Exchange, in its sole discretion, may determine not to approve terminals for regularity, regardless of whether such terminals meet the preceding requirements and conditions.

**708.B.   Withdrawal or Revocation of Approved Status**

The Business Conduct Committee may revoke a declaration of regularity whenever a regular terminal fails to comply with the conditions specified in this Chapter, any other conditions to which it has agreed in its application for regularity, or any other Exchange Rules.

Unless a shorter notification period is otherwise authorized by the Exchange, a terminal shall give six (6) months prior written notice to the Exchange prior to withdrawing from regularity.

If the designation of a terminal as regular is withdrawn or revoked, a notice shall be posted announcing such withdrawal or revocation and also the period of time, if any, during which deliveries can be made through such terminal in satisfaction of futures contracts under the Rules of the Exchange.

**709.-713.**   **[RESERVED]**

**714.**   **FAILURE TO DELIVER**

In the event a clearing member fails to fulfill its specific delivery obligations pursuant to Exchange Rules, the sole obligation of the Clearing House is to pay reasonable damages proximately caused by such delivery obligation failure, in an amount which shall not exceed the difference between the delivery price of the specific commodity and the reasonable market price of such commodity at the time delivery is required according to the Rules of the Exchange. The Clearing House shall not be obligated to: (1) make or accept delivery of the actual commodity; or (2) pay any damages relating to the accuracy, genuineness, completeness, or acceptableness of certificates, instruments, warehouse receipts, shipping certificates, or other similar documents; or (3) pay any damages relating to the failure or insolvency of banks, depositories, warehouses, shipping stations, or similar organizations or entities that may be involved with a delivery.

Notwithstanding any provision of the Rules, the Clearing House has no obligation or liability to any clearing member or any other person relating to a failure to fulfill a delivery obligation unless it is notified by the clearing member that did perform, or was in a position to perform its delivery obligations, that a failure occurred, as soon as possible, but in no event later than 1 hour after the delivery deadline for the respective product, which may be extended by the

Global Head of Clearing & Post-Trade Services or their designee pursuant to the provisions of Rule 702.

If a clearing member does not fulfill its delivery obligations to another clearing member, it shall be responsible to the Clearing House for any damages incurred by the Clearing House as a result of such delivery obligation failure.

A failure by a clearing member carrying a short futures position to tender a Delivery Notice on or before the time specified by the Clearing House on the last day on which such notice is permitted shall be deemed a violation of this Rule, except that the Global Head of Clearing & Post-Trade Services may, for good cause, extend the time to present such notice.

Unexcused failure to make delivery shall be deemed an act detrimental to the interest or welfare of the Exchange. In addition to any penalties imposed as provided in Chapter 4, the Clearing House Risk Committee shall determine and assess the damages incurred by the buyer.

### 715. FAILURE TO ACCEPT DELIVERY OR REMIT FULL PAYMENT

Where a buyer to whom a delivery has been assigned by the Clearing House fails to take such delivery and make payment when payment is due, the seller tendering such delivery shall immediately notify the Clearing House. If a clearing member obligated to receive delivery fails to make full payment to the seller, the Clearing House shall debit the account of said clearing member an amount sufficient to complete the delivery.

Failure to accept delivery or to remit full payment shall be deemed an act detrimental to the interest or welfare of the Exchange.

### 716. DUTIES OF CLEARING MEMBERS

Prior to the last day of trading in a physically delivered contract, each clearing member shall be responsible for assessing the account owner's ability to make or take delivery for each account on its books with open positions in the expiring contract. Absent satisfactory information from the account owner, the clearing member is responsible for ensuring that the open positions are liquidated in an orderly manner prior to the expiration of trading.

### 717. [RESERVED]

### 718. CUSTOMER SUBSTITUTION IN THE EVENT OF CLEARING MEMBER BANKRUPTCY

In the event that an "order for relief" as defined at CFTC Reg. 190.01(ee) has been entered in respect to a clearing member whose customer holds a futures contract or options contract that may only be liquidated by physical delivery and, as to such contract:

1. trading has ceased on the date of the entry of the "order for relief;"
2. notice of delivery has been tendered on or before the date of the entry of the "order for relief;" or
3. trading ceases before the trustee can liquidate the contract;

then, notwithstanding having been matched for delivery by the Clearing House, the Clearing House shall allow the customer (if his identity can be readily ascertained and verified) to be directly substituted for the debtor clearing member to the extent necessary to complete delivery. None of the requirements for delivery, including notices, instructions, payment, etc., shall be waived hereby. Moreover, substitution shall in no way relieve the debtor clearing member of its obligations to the Clearing House and the opposite clearing member in regard to any claims arising out of that delivery.

### 719. INITIAL REGULARITY FOR DELIVERY AGAINST A NEW FUTURES CONTRACT

Initial regularity for delivery against a new futures contract concurrent with the listing of such new futures contract shall be effective either fifteen days after the Exchange posts a notice that a bona fide application has been received or the day after the application is approved by the Exchange, whichever is later.

### 720.-759. [RESERVED]

### 760. DELIVERY PROCEDURES IN OTHER COMMODITIES

All other commodities which do not have delivery provisions specified in this chapter shall be governed by the requirements of the relevant contract specification chapter.

**761.-769.** **[RESERVED]**

**770.** **DELIVERY OBLIGATION TRANSFER PROCEDURES**

A clearing member that carries a futures position in a physically delivered contract that has expired as the result of any party's error, omission or outtrade discovered on or after the last day of trading may, with the consent of the account owner(s) or controller(s), transfer such position to an account with different beneficial ownership; provided, however, that the parties to an error or outtrade must exercise the utmost diligence to resolve the error or outtrade.

Notice of delivery obligation transfers must be made to the Clearing House. Such transfers require that the Clearing House receive acceptance from an account(s) with different beneficial ownership and confirmation of the agreed upon transfer by the initiating party. Such confirmation must be submitted in writing on the form specified by the Clearing House. All positions transferred pursuant to this Rule shall take place at the final settlement price of the contract; however, this requirement does not prohibit cash adjustments between the parties to the transfer.

Clearing member firms representing accounts that have transferred a trade pursuant to this Rule must correctly report the change in open interest to the Clearing House pursuant to the schedule established by the Exchange.

In the event a delivery obligation transfer notification does not result in a trade transfer, delivery shall take place as required under Exchange Rules.

Nothing in this Rule relieves a clearing member of its responsibilities with respect to open positions in an expiring contract month in a physically delivered contract as set forth in Rule 716.

**771.** **ALTERNATIVE NOTICE OF INTENTION TO DELIVER**

A seller and buyer matched by the Exchange may agree to make and take delivery under terms or conditions which differ from the terms and conditions prescribed by this Chapter, and the applicable chapter which contains the contract specifications for the products being delivered, and such other requirements as the Exchange may prescribe.

In such instances, matched clearing members shall execute an Alternative Notice of Intention to Deliver ("ANID") in the form and manner prescribed by the Exchange and shall deliver a completed and executed copy of such notice to the Exchange. The delivery of an executed ANID to the Exchange shall release the clearing members and the Exchange from their respective obligations under the rules of this Chapter and any other Exchange rules and requirements regarding physical delivery.

In executing such notice, clearing members shall indemnify the Exchange against any liability, cost, or expense the Exchange may incur, for any reason, as a result of the execution, delivery or performance of such contract or such agreement, or any breach thereof or default thereunder. Upon receipt of an executed ANID, the Exchange will return to the clearing members all margin monies held for the account of each with respect to the contracts involved.

---------------------------
**INTERPRETATIONS & SPECIAL NOTICES**
**RELATING TO CHAPTER 7**

**Link to table is below:**

**Service Providers (xls)**